LINDEN SCHOOL DISTRICT NO. 24,
Plaintiff and Appellant,

v.

Clifton R. PORTER, and Una Porter,
Defendants and Respondents.

No. 8040.

Supreme Court of North Dakota.

Aug. 21, 1964.

Price & LaQua, Langdon, for plaintiff and appellant.

Neil Thompson, Devils Lake, for defendants and respondents.

BURKE, Judge.

This is a statutory action to determine adverse claims brought by the plaintiff school board to evict the defendants from school property and recover damages both for the use of the property and for waste. In their answer to plaintiff's complaint the defendants alleged that their occupancy of plaintiff's property was pursuant to contract and counterclaimed for wages they alleged were due under employment contracts. At the time the action was tried the defendants had vacated plaintiff's property and the trial was limited to the claims of the respective parties for damages. The case was tried to the court without a jury. As a result of the trial the claims of the plaintiff and of the defendant, Clifton Porter, were disallowed and the claim of the defendant, Una Porter, was allowed. Judgment was entered accordingly and plaintiff has appealed and demanded a trial de novo in this court.

This controversy arose out of transactions between the defendants and Byron School District in Pembina County. Linden School District is the plaintiff herein, because, in February 1960, it annexed most of the Byron School District and as a result of the annexation, it acquired all of the assets, and assumed all of the liabilities, of Byron School District.

Una Porter had been the teacher in Byron School District for the school years 1957–1958 and 1958–1959. On April 14, 1959, her contract was renewed for the year 1959–1960. This contract contained the provision required by Section 15–25–09 NDCC that the school "may be discontinued when the attendance falls below 6 for 10 consecutive days, and that no compensation shall be received by said teacher from the date of such discontinuance." The defendant,

Clifton Porter, husband of Una Porter, testified that, in September 1959, he was employed as janitor of the Byron School for the school year of 1959–1960; that he was to receive $70.00 a month wages, living quarters in the school house and electric light and telephone. The minutes of the Byron School Board make no mention of this employment. The minutes of October 7, 1959, and subsequent months specifically authorize the payment of the janitor's wages. The defendant, Clifton Porter, asked several times to have his contract reduced to writing. Finally, on December 12, 1959, a written document embodying the terms of the alleged contract was executed by Wayne McLean as President of Byron School District and Clifton Porter. This document was attested by Mrs. Phil Bottrell, Clerk of the School Board. There were three members of the School Board, Mr. Ronnie Romfo, Mr. Phil Bottrell and the president, Mr. Wayne McLean. Mr. McLean testified: "I had seen Ronnie Romfo (about the contract) and he didn't say one way or another, so then I went to see Mr. Bottrell and he said it was okay, so we had our clerk draw up the contract." The document was signed in Mr. Bottrell's home and in his presence. The next meeting of the school board was held on January 28, 1960. At that time all members of the Board were present and the matter of the written contract with the janitor was discussed. All members of the Board knew it had been executed. The minutes of the Board contain no specific ratification of the contract but they do authorize the payment of the janitor's wages. Mr. McLean testified that the written contract put into writing what the Board's agreement was with Porter at the beginning of the school year as to the amount of wages and other benefits.

At the time Mrs. Porter's contract for 1959–1960 was renewed it was anticipated that there would be at least six students in attendance at the Byron School during that year. However, no more than four students ever attended. In November 1959, a public meeting was held in Byron School

to discuss the possibility of annexation to another district. On December 7, 1959, the Byron District School Board and many of the Patrons of the Byron School District met with the School Board of Linden District to discuss a petition for annexation. The annexation of Byron School District to Linden School District became effective on February 2, 1960. As a result of the annexation Linden School District acquired the assets of Byron School District and assumed its liabilities.

The minutes of the Linden School Board of February 9, 1960, show the following:

"Clerk was instructed to notify Mrs. Clifton Porter that if the attendance remains at less than six, the Byron School will be closed February 15, 1960." Mrs. Porter was notified to that effect by a letter dated February 10, 1960.

The Linden School Board's minutes for February 24, 1960, shows the following:

"The clerk was instructed to notify Clifton A. Porter that the Byron School is to be vacated March 1, 1960, and that the utilities are to be cut off as of that date. Also that janitor's salary will be cut off as of the date of this notice."

A notice was served upon Clifton Porter in accordance with the instruction to the clerk.

No school was held in the Byron School subsequent to February 15, 1960, but the Porters continued to reside in the school building until the end of May 1960, during which time they heated the building with coal which belonged to the school board, and paid $40.21 for electric power and $23.07 for telephone.

This action was commenced in March 1960, but trial was delayed until after the question of possession had become moot and there remained for litigation only the claims of the respective parties for damages.

The first question for decision is whether the contract of Una Porter was legally terminated as of February 15, 1960. There can be no question but that the grounds for the termination were legal grounds. Section 15-25-09 NDCC provides:

"* * * any school may be discontinued when the average attendance of pupils therein shall be less than six for ten consecutive days, if proper and convenient school facilities for the pupils can be provided in some other school in the territory of the closed school * * *."

Section 15-25-08 NDCC requires:

"* * * Every contract for the employment of a teacher shall be in writing, and shall be executed before the teacher begins to teach in such school, and each such contract shall provide that in the event of a discontinuance of a school term for lack of attendance as provided in this chapter, no compensation shall be paid to the teacher from the date of such discontinuance. * * *."

■ Since at no time during the school year of 1959–1960, did the attendance ever exceed four, the Byron School term was legally subject to discontinuance at any time the Board made other arrangements for the four pupils in attendance.

The discontinuance is challenged on procedural grounds. It is urged:

(1) That the minutes of the Linden School Board show no formal resolution declaring the discontinuance; (2), That the record does not affirmatively show the arrangements for the placing of the pupils of Byron School in another school and (3), That reasonable notice of the closing of the Byron School was not served upon Una Porter.

■ In passing on the sufficiency of the minutes kept by a school board of a common school district consideration should be given to the fact that ordinarily the members of such a board and its clerk are not experts in the field of keeping records of

proceedings and that the meetings of such boards are to a large extent conducted informally. Such minutes will therefore not be given a technical construction and irregularities and informalities will be disregarded, where the minutes are sufficient to show the board's intention. Kinney v. Howard, 133 Iowa 94, 110 N.W. 282; Quisenberry v. School Dist. No. 6 of Hall County, et al., 75 Neb. 47, 105 N.W. 982. Montgomery, et al. v. Claybrooks, 213 Ky. 493, 281 S.W. 469.

■ As has been heretofore set forth, the minutes of Linden School District of Feb. 9, 1960, instructed the clerk to notify Una Porter that if the attendance remained at less than six until February 15, 1960, the school would be discontinued as of that date. Although the minutes of the Board do not show a subsequent resolution specifically declaring the discontinuance of the school, in view of the circumstances we see no need for such a resolution. The record shows that at no time during the school year, had the attendance at the Byron School been more than four. The members of the Board knew at the time, the instructions to the clerk were given, that there was no chance that the attendance would increase and the minutes of the Board clearly disclose the intent of the Board to discontinue the school on February 15. This was sufficient.

■ In support of her challenge to the action of the Linden School Board on the ground that the record does not affirmatively show that the Board had made arrangements for the education of the pupils of Byron School at another school, defendant, Una Porter, cites the case of McWithy v. Heart River School Dist. No. 22, 75 N.D. 744, 32 N.W.2d 886. In that case it was said that a school board which discontinued a school had the burden of showing by a preponderance of the evidence, that all of the statutory conditions precedent to discontinuance had been fulfilled. In that case, however, the record showed affirmatively that after the school board had voted a resolution of discontinuance the school remained open and was attended regularly by five pupils who were instructed by the teacher for the balance of the school term. There was thus evidence in the case from which it could be inferred that no adequate provision had been made to educate these five pupils at another school. In the instant case there is no such evidence. Section 31-11-03 NDCC which catalogs disputable presumptions, sets forth the presumption, "That official duty has been performed regularly." Since this is a disputable presumption, it follows that where there is evidence that official duty has not been regularly performed, the burden of going forward with the evidence is cast upon the officials whose acts are challenged. Where as in the instant case, there is no such evidence, the presumption as to regularity is prima facie satisfaction of the officials' burden of proof. Coulter v. Ramberg, 79 N.D. 208, 55 N.W.2d 516; Pine Tree Lumber Co. v. City of Fargo, 12 N.D. 360, 96 N.W. 357.

■ In the instant case defendant, Una Porter, was given five days notice of the discontinuance of the school. She says that this was not a reasonable notice. Neither the controlling statute (Section 15-25-09 NDCC, supra) nor the teacher's contract made pursuant to statute contain any provision for notice. In the McWithy case, supra, where no notice of discontinuance, at all, was given, we said that the teacher, whose school was discontinued was entitled to formal notice of discontinuance. Section 15-25-09, supra, clearly contemplates that a school board of a common school district may discontinue a school forthwith when the attendance has dropped below six pupils for ten consecutive days and arrangements have been made to educate the remaining pupils, elsewhere. Section 15-25-08, supra, prohibits the payment of salary to a teacher after the date of discontinuance. The teacher has notice from the statute and the teacher's contract and from the lack of attendance for a period of ten consecutive days that the school may

be closed at any time. The teacher is entitled to notice of the actual closing but not to notice that the school will be closed after the lapse of a given number of days. A holding to that effect would increase the number of consecutive days of lack of attendance, required for the discontinuance, beyond the ten day period provided by statute. In this case the notice was adequate.

For reasons above stated it is our view that the Byron School was legally discontinued and therefore the defendant, Una Porter, was not entitled to her teacher's salary after the date of closing.

Clifton Porter testified that he was hired by the Byron School Board as janitor of Byron School for the school year 1959–1960, in this he is corroborated by the President of the School Board. The minutes of the Board do not show this hiring and there was no written contract executed at the commencement of the employment. In December 1959, a written instrument was executed by Clifton Porter and Wayne McLean, president of the Board, which, according to McLean contained the terms of the oral agreement Porter had made with the School Board in September. McLean also testified that Porter had asked the Board for a written contract and that "it was just the fault of the School Board that he didn't get it sooner." Since the written agreement was authorized by two members of the Board, acting individually and not at a Board meeting, it was not binding upon the School District. Gillespie v. Common School Dist. No. 8, McLean County, 56 N.D. 194, 216 N.W. 564; Auran v. Mentor School Dist. No. 1, of Divide County, 60 N. D. 233, 233 N.W. 644.

The oral contract, which both McLean and the defendant, Clifton Porter, testified was agreed to by the Board at the beginning of the school term is challenged upon the grounds that it is not written and that it is not shown by the minutes of the Board. Certain school board contracts are required to be in writing. Section 15–25–08 NDCC provides, that teacher's contracts shall be in writing. Section 15–34–12 NDCC provides, the contracts for the transportation of pupils shall be in writing. We find no such statutory provision with respect to the employment of janitors. Our conclusion, from our examination of the statutes is that where the legislature intended written contracts, it has so provided and that, where no legislative requirement for a written contract exists, the general laws with respect to contracts apply. It follows that the objection that the janitor's contract is not in writing is not a valid objection.

With respect to whether a contract not shown by the minutes of a school board can be a valid contract, we find a contrariety of decision. Some of the decisions hold that it is the vote of the directors which is controlling and that if the clerk fails to record the action of the board in the minutes, such action may be proved by the testimony of any person who was present at the meeting. German Ins. Co. v. Independent School Dist., 49 U.S.App. 271, 80 F. 366, 25 C.C.A. 492; Decker v. School Dist. No. 2, 101 Mo. App. 115, 74 S.W. 390. Other decisions hold that a record is essential. Broussard v. Verret, 43 La.Ann. 929, 9 So. 905; Blodgett v. Seals, 78 Miss. 522, 29 So. 852, Anno. 12 A.L.R. 235.

For the purposes of this case, we shall assume without deciding that a record is essential. Upon this assumption it follows that no binding contract for the employment of the janitor came into existence at the beginning of the school term. However, a contract which is not binding upon the school district may be validated by subsequent ratification of the board, if the contract was one which the board had the power to make in the first instance. Gillespie v. Common School Dist. No. 8, McLean County, 56 N.D. 194, 216 N.W. 564; Beckman v. Belyea, 60 N.D. 738, 236 N.W. 361.

In the instant case the minutes of the School Board show that the janitor's salary was paid in October, November, December, January and February. It appears

therefore that some contract with the janitor was ratified. The only issue in the case with respect to the defendant, Clifton Porter's, contract was its duration. The trial judge found, since the minutes made no reference to duration and only showed a month by month payment, that the decision of this issue was controlled by Section 34–04–02 NDCC. This section in so far as it is applicable provides:

"Unless it is otherwise provided in the contract of employment, the length of time for which a servant is hired shall be presumed, if he is hired:

\* \* \* \* \* \*

"(3) at a monthly rate, to be for one month;

\* \* \* \* \* \*."

The court therefore held that Clifton Porter was employed upon a month to month basis.

In Gillespie v. Common School Dist. No. 8, McLean County, we held that the minutes which ratified the contract did not need to embody the terms of the contract. In that case the Board directed the payment $1,-500.00 "according to contract," and this court said: "Clearly the board had in mind the contract of April, 1920, and just as clearly approved of that contract and recognized it as being effective and binding as against the district." Thus the question of what contract was ratified by the board was determined by reference to the contract of April 1920, which was irregularly executed and not binding on the school district.

In the instant case there is the testimony of Clifton Porter as to what the terms of his oral contract were. His testimony is corroborated by Wayne McLean, president of the Board. This testimony is that the duration of Porter's employment was for the school year 1959–1960. There is no evidence in the record to the contrary. The testimony as to the duration of Porter's employment is further corroborated by the irregularly executed written contract. Wayne McLean testified that this written contract was discussed at the meeting of the Board, subsequent to its execution. All members of the Board were aware of the terms of the oral contract. They were aware of the terms of the written contract. As we have said, some contract was ratified, and unless we assume that the members voted to approve the payments to Clifton Porter with unexpressed mental reservations, the contract ratified, was the oral contract made by the Board with Clifton Porter at the beginning of the school year. This contract was for the duration of the school year.

When the Linden School District assumed the obligations of Byron School District, it assumed Byron School District's obligations under this contract. We hold therefore that the defendant, Clifton Porter, is entitled to recover on his counterclaim for wages which were not paid from February 25, 1960, until the end of the school year, and for electric power and telephone bills in the sum of $40.21 and $23.07 respectively.

The judgment of the district court is reversed and the case remanded with instructions to enter judgment in accordance with this opinion. No costs will be allowed upon appeal.

MORRIS, C. J., and TEIGEN, J., concur.

STRUTZ, J., did not participate.

ERICKSTAD, J., not being a member of this Court at the time of submission of this case, did not participate.